# EXHIBIT 4

Clerk of the Superior Court
*** Electronically Filed ***
J. Nelson, Deputy
2/9/2021 10:53:04 AM
Filing ID 12524147



Lisa J. Counters, 016436
4506 N 12th Street Phoenix, AZ 85014-4246
Voice: (602) 266-2667, Ext. 106
Fax: (602) 266-0141
Lisa@SchiffmanLaw.com
*Attorney for Plaintiff*

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| MARINO V. SCAFIDI, an unmarried man,<br><br>Plaintiff,<br><br>v.<br><br>MUTUAL OF OMAHA INSURANCE CO., a foreign corporation,<br><br>Defendants. | Case No. **CV2021-002181**<br><br>**COMPLAINT**<br><br>(tort non-motor vehicle) |

Plaintiff Marino V. Scafidi ("Dr. Scafidi") alleges:

1. Dr. Scafidi is and has been a resident of Maricopa County at all relevant times.

2. Defendant Mutual of Omaha Insurance Company ("Mutual of Omaha") is an insurer licensed and doing business in Arizona. It has caused acts to occur in Arizona, which are the subject of this Complaint.

3. Jurisdiction and venue are proper in Maricopa County, Arizona.

4. Dr. Scafidi purchased long-term-disability Policy No. D81DN2-921030-91M from Mutual of Omaha with an effective date of October 23, 2015.

5. Dr. Scafidi also purchased seven riders, including:

 ➢ Cost of Living Adjustment Rider

 ➢ Hospital Confinement Indemnity Benefits Rider with Daily Room Benefit

 ➢ Social Insurance Supplement (SIS) Rider

 ➢ Extended Proportionate Disability Benefits Rider

> Accidental Medical Expense Rider

> Extended Own Occupation Disability Definition Amendment Rider

> Future Insurability Option Rider

6. The Policy provides disability benefits if Dr. Scafidi, due to Sickness or Injury, cannot perform the material and substantial duties of his Regular Occupation, is not engaged in any occupation for wage or profit is receiving regular medical care.

7. Premiums for the Policy are waived when Dr. Scafidi is entitled to disability benefits.

8. On August 3, 2016, Dr. Scafidi sustained severe accidental physical injuries to his right upper extremity (specifically his right neck, shoulder, elbow, and wrist).

9. Dr. Scafidi submitted a claim for disability benefits, Claim No. 584368516600, to Mutual of Omaha on or about December 29, 2016.

10. His injuries were exacerbated by a motor vehicle accident ("MVA") on July 25, 2018.

11. In a letter dated June 5, 2017, Debra Plater ("Plater"), a Senior Long-Term Disability Analyst for Mutual of Omaha, informed Dr. Scafidi that Mutual of Omaha approved his claim.

12. The June 5, 2017 letter contained incorrect and misleading information. Plater represented that Dr. Scafidi's benefit period ended on March 29, 2022. The Policy pays to age 67, and Dr. Scafidi does not turn 67 until November 19, 2047. Plater represented that the definition of disability changed after 24 months to whether Dr. Scafidi could perform any "gainful" occupation. Dr. Scafidi had an extended own occupation disability definition rider, which provides benefits to him as long as he cannot perform his Regular Occupation. Plater also failed to list Dr. Scafidi's benefit-related riders.

13. Mutual of Omaha did not correct Plater's errors until three years later when Dr. Scafidi pointed out Plater's errors in his letter dated June 13, 2020.

14. In a letter dated March 22, 2019, Plater informed Dr. Scafidi that Mutual of Omaha referred his benefit claim for an Independent Medical Exam ("IME").

15. Mutual of Omaha referred Dr. Scafidi to Dr. Michael A. Steingart, D.O. for the IME.

16. Dr. Steingart performed a defense medical examination on June 21, 2019 and later issued a report.

17. In a letter dated August 26, 2019, Plater asked Dr. Scafidi's treating physician, Dr. Ryan Rudd, to either agree or disagree with the IME report and:

> *If you disagree we ask that you respond with the reasons and rationale on how you arrived at that conclusion. Please provide any specific symptoms, physical examination findings and diagnostic test results to support any restrictions and limitations.*

18. Nothing in Plater's August 26, 2019 letter suggested that Dr. Rudd could not rely on existing physical examination findings or diagnostic tests. And Plater did not expressly request additional medical information.

19. Due to his full-time medical practice, Dr. Rudd could not review the IME report, which consisted of several thousand pages from multiple providers, within ten business days.

20. In a letter dated November 18, 2019, Mutual of Omaha denied Dr. Scafidi's claim based on the IME.

21. In a letter dated November 19, 2019, Dr. Rudd responded to Plater's request and stated, among other things:

> ➢ [I]t is apparent that there are false statements made in Dr. Steingart's report.
>
> ➢ Dr. Steingart's report seems to have omitted current MRI findings from earlier this year showing injury to the right shoulder and degenerative changes to the cervical spine that give reason and validation for [Dr. Scafidi's] ongoing pain and risk of further injury and pain if he continues to work as a chiropractor.
>
> ➢ I was concerned with certain statements from Dr. Steingart in his report. He states that he was unsure how Dr. Scafidi could maintain personal grooming (shaving body/head) if he could not lift his arm. I asked Dr. Scafidi about this statement, and he said that Dr. Steingart did not ask him about his grooming habits.
>
> ➢ There are various statements made by Dr. Steingart in his report contradict the information provided to him in his own intake forms.

- There also seems to be confusion from Dr. Steingart's report as to the patient's response to care from his treatment regarding both his work related injury and MVA. . . . Dr. Steingart refers to this office as a "Chiropractic clinic," which gives me the assumption that he believes all the patient was receiving was chiropractic care. [Dr. Scafidi's] records clearly show that he has received examination and treatment from various providers of different specialties, including chiropractors (DC), physical therapists (DPT) and pain management physicians (MD). . . . It concerns me that Dr. Steingart is disregarding this or unaware of the nature of examination provided to Dr. Scafidi, even though it is listed multiple times in his medical records. . . . There have been numerous examples of examinations by a variety of health care providers that show evidence of injury and reason for Dr. Scafidi to suspend working as a chiropractic physician. Continued work in this manner would only cause further aggravation to his injury and likely worsening of his condition.

- There are other various statements and inconsistencies with Dr. Steingart's report that lead me to believe that this was not an unbiased examination and that information was clearly omitted or changed.

- It is my opinion that Dr. Marino Scafidi has benefited from supportive care as shown both subjectively and objectively.

- I do not agree with Dr. Steingart's assessment of Dr. Scafidi's disability status.

22. Another treating provider, Dr. Douglas Morris, also submitted to Mutual of Omaha a response to Dr. Steingart's IME report, which reiterates and supplements Dr. Rudd's observations and concerns regarding the IME report.

23. Dr. Morris explained in detail the subjective and objective medical evidence supporting Dr. Scafidi's disability claim and listed the inaccuracies in Dr. Steingart's report accompanied by the evidence demonstrating the inaccuracies.

24. In a letter dated December 11, 2019, Mutual of Omaha informed Dr. Scafidi that because Mutual of Omaha had denied continued disability benefits, his disability insurance premiums were no longer waived.

25. In a letter dated December 14, 2019, Plater informed Dr. Scafidi that Mutual of Omaha received Dr. Rudd's letter disagreeing with the IME Report but faulted Dr. Rudd for not providing additional medical information. Plater concluded, "there are no additional benefits payable as there are no restrictions and limitations that prevent your [sic] from returning to work please submit for review."

26. In a letter dated January 6, 2020, Dr. Scafidi disputed his premium waiver denial but tendered the premium to avoid any coverage lapse. He stated:

> As a measure of good faith, I will make this payment of $6,297.47 because I do not want any lapse in my accidental long term disability policy coverage. **However, it is important to note that this good faith payment should not be construed as an admission that I am physically able to go back to work; nor do I agree with Mutual of Omaha's position that I no longer qualify for waiver of premiums.** . . . When my long term disability policy benefits are reinstated; I will expect Mutual of Omaha to refund this premium in full immediately.

27. In a letter dated January 11, 2020, RE: Notice of Continued Disability for Long Term Disability Income Insurance Policy, Dr. Scafidi provided proof of continued disability to Mutual of Omaha, including January 14, 2019 MRIs of his shoulder and spine, with the following findings:

- spondylitic changes on the lower cervical vertebra,
- a slight left paracentral disc bulge at C3-4,
- a bulging annulus at C4-5,
- a broad-based disc bulge at C5-6 with associated right-sided foraminal narrowing and compression on the right exiting nerve root,
- a bulging annulus at C6-7,
- subchondral cystic change of the superior lateral humeral head, which This finding may represent a Hill-Sach's deformity relating to posterior lateral instability.
- productive changes of the acromioclavicular joint,
- prominence of the supraspinatus tendon,
- increased fluid at the level of the biceps tendon sheath consistent with biceps tenosynovitis,
- fluid signal in the glenohumeral joint space and a labral/SLAP tear is likely.

28. The new MRI findings are significant and show more severe injury than the initial MRIs.

29. In another letter dated January 11, 2020, RE: Supplementary Response to IME Assessment by Michael A. Steingart, D.O., Dr. Scafidi addressed the misrepresentations and inadequacies of the IME Report and presented evidence of Dr. Steingart's bias and

reputation. In particular, Dr. Scafidi noted the numerous times Dr. Steingart misstated the information Dr. Scafidi had provided to Dr. Steingart. Specifically, Dr. Steingart misstated:

- how Dr. Scafidi stated he sustained his injuries,
- Dr. Scafidi's initial treatment history,
- that Dr. Scafidi stated he had almost improved to the point of going back to work before his MVA,
- that Dr. Scafidi had improved to pre-injury level rather than pre-MVA injury level,
- Dr. Scafidi's reports of incidents of pain associated with chiropractic work, instead attributing them to mild stretching and physical therapy,
- the information that Dr. Scafidi provided on the intake forms for the IME,
- the information that Dr. Scafidi provided during the examination,
- Dr. Scafidi's description of the MVA,
- Dr. Scafidi's medical history,
- the content of medical records,
- Mutual of Omaha's nurse review,
- Dr. Scafidi's diagnoses

The letter notes how Dr. Steingart cherry-picked the medical records and then details the objective and subjective medical evidence related to each inquiry Mutual of Omaha posed to Dr. Steingart and supports a finding of disability.

30. In a letter dated January 23, 2020, Kirk Steube ("Steube"), a Mutual of Omaha Lead Benefit Claim Specialist, informed Dr. Scafidi that Mutual of Omaha was continuing to review the claim.

31. Mutual of Omaha did not explain to Dr. Scafidi why it reassigned his claim from Plater to Steube.

32. In a letter dated February 8, 2020, RE: Supplementary Information/Response Letter Dated February 8, 2020, Dr. Scafidi provided an additional response to the IME and an analysis of Mutual of Omaha's claim handling.

33. In a letter dated February 19, 2020, Steube acknowledged receipt of Dr. Scafidi's authorization form and informed Dr. Scafidi that Mutual of Omaha was requesting additional medical records from his providers.

34. In a letter dated February 26, 2020, Steube informed Dr. Scafidi that it needed additional medical records to review his claim and again stated the Mutual of Omaha had requested documents from his providers.

35. In a letter dated March 2, 2020, RE: Second Supplementary Information/Response Letter Dated March 2, 2020, Dr. Scafidi responded to Mutual of Omaha's correspondence date February 19, 2020 and February 26, 2020.

36. In a letter dated March 11, 2020, Steube informed Dr. Scafidi that it had received additional medical records from some of Dr. Scafidi's providers but that Dr. Scafidi may want to reach out to the other providers.

37. In a letter dated April 1, 2020, Mutual of Omaha notified Dr. Scafidi that one of the providers rejected the authorization form and that Dr. Scafidi should reach out to that provider to release records.

38. In a letter dated April 8, 2020, Steube informed Dr. Scafidi that it had received his new authorization form and that Mutual of Omaha had sent it to the provider.

39. Five months after denying continuing benefits, in a letter dated April 29, 2020, Steube informed Dr. Scafidi of the status of its medical records requests to his providers.

40. In a letter dated May 1, 2020, RE: Third Supplementary Information/Response Letter Dated May 1, 2020, Dr. Scafidi responded to Mutual of Omaha correspondence date February 19, 2020, February 26, 2020, March 1, 2020, April 1, 2020, April 8, 2020, and April 29, 2020.

41. In a letter dated May 11, 2020, Steube informed Dr. Scafidi that Mutual of Omaha had received the letter with his concerns and forwarded it with that additional medical records from his providers to Dr. Steingart.

42. In a letter dated May 13, 2020, RE: Fourth Supplementary Information/Response Letter Dated March 13, 2020, Dr. Scafidi provided a response to

Mutual of Omaha correspondence dated February 19, 2020, February 26, 2020, March 11, 2020, April 8, 2020, April 29, 2020, and May 11, 2020.

43. On May 13, 2020, Dr. Scafidi also submitted a letter RE: SECOND FORMAL COMPLAINT – Violation of Contractual/Fiduciary Duties of Good Faith and Fair Dealing, in which he sets forth acts of bad faith as follows

- ➢ Mutual of Omaha set up barriers to obtaining benefits,
- ➢ Mutual of Omaha delayed or denied payments,
- ➢ Mutual of Omaha used biased medical reviewers,
- ➢ the IME Mutual of Omaha relied upon included false information, misrepresentations, or omitted material facts,
- ➢ Mutual of Omaha did not fairly, objectively, promptly, reasonably, thoroughly, or completely investigate the claim,
- ➢ Mutual of Omaha put its interests ahead of Dr. Scafidi's interests,
- ➢ Mutual of Omaha acted as an adversary bent on denying the claim,

44. In a letter dated June 4, 2020, Steube informed Dr. Scafidi that Dr. Steingart could not make a final determination on Dr. Scafidi's disability until he reviewed the January 14, 2019 MRI.

45. In a letter dated June 5, 2020, RE: Fifth Supplementary Information/Response Letter Dated June 5, 2020, Dr. Scafidi provided a response to Mutual of Omaha correspondence dated June 4, 2020, in which he noted that he had personally given the January 14, 2019 MRI to Dr. Steingart on June 21, 2019 at the IME.

46. Seven months after denying continued benefits, in a letter dated June 8, 2020, Steube informed Dr. Scafidi that Mutual of Omaha was requesting another copy of the January 14, 2019 MRI from the provider, which is the same MRI Dr. Scafidi provided to Dr. Steingart at the IME and to Mutual of Omaha in January 2020. *See supra* ¶26.

47. In a letter dated June 30, 2020, Gregory P. Richt ("Richt"), a Technical Benefits Specialist for Mutual of Omaha addressed Dr. Scafidi's January 11, 2020 letter. Richt reiterated that Mutual of Omaha was continuing to deny his claim due to lack of medical evidence to support his disability and disputed that Mutual of Omaha acted in bad faith.

48. Mutual of Omaha did not explain to Dr. Scafidi why it reassigned his claim from Steube to Richt.

49. In a letter dated July 6, 2020, Re: Notice of Continued Disability for Long Term Disability Income Insurance Policy, Dr. Scafidi provided continued proof of disability.

50. In another letter dated July 6, 2020, RE: THIRD AND FINAL FORMAL COMPLAINT – Breach of Contract/Violation of Duty of Good Faith and Fair Dealing, Dr. Scafidi continued to submit proof of his disability, disputed the finding of Mutual of Omaha's medical reviewers, pointed out the errors in Mutual of Omaha's claim handling, and listed Mutual of Omaha's acts of bad faith, which include.

- unreasonably delaying benefit payments for several months;
- forcing him and his doctors to jump through adversarial hoops, including requiring redundant "Continuance of Disability Report & Physician's Statement" forms;
- forcing him and his doctors to repeatedly respond to biased reviews and assessments that were supposed to be independent and objective.
- having the same biased examiners continue to review his claim;
- ignoring objective and subjective medical evidence that supports his claim;
- failing to assess all of the evidence;
- placing its interests ahead of his interests;

51. In a letter dated July 13, 2020, RE: Sixth Supplementary Information/Response Letter Dated July 13, 2020, Dr. Scafidi responded to Richt's June 30, 2020 letter, provided a cumulative summary of the claim, reiterated his objection to Mutual of Omaha continuing to contact him solely by U.S.P.S. mail, which unreasonably delays communication, after his multiple requests to communicate with him by fax or email.

52. Three years after Plater's June 5, 2017 letter, in a letter dated June 22, 2020, Richt corrected the errors in Plater's June 5, 2017 letter. Richt explained that the 90-day elimination period would end on March 29, 2017. Then, Dr. Scafidi would be entitled to a $5,500 monthly disability benefit and an additional $2,500 under a Social Insurance

Supplement ("SIS") rider until Dr. Scafidi reached age 67 (November 19, 2047), or he returned to work, whichever occurred first.

53. In a letter dated July 28, 2020, Richt provided a timeline of medical records request and claimed Mutual of Omaha was still waiting for the January 2019 MRI from a provider. Again, Mutual of Omaha sought the MRI Dr. Scafidi hand-delivered to Dr. Steingart on June 28, 2019, and sent to Mutual of Omaha in January 2020.

54. In a letter dated September 22, 2020, Mutual of Omaha issued its final denial of Dr. Scafidi's appeal of the denial of his claim.

55. There is no unbiased evidence that Dr. Scafidi's medical condition has sufficiently improved to the point where he can return to work and perform the material and substantial duties of a full-time chiropractor since Mutual of Omaha initially approved his claim.

56. Dr. Scafidi has not engaged in any occupation for wage or profit since becoming disabled.

57. Since he became disabled, Dr. Scafidi has been receiving regular medical care.

58. Dr. Scafidi continues to be totally disabled as defined by the Policy.

## COUNT I
## INSURANCE BAD FAITH

59. All other paragraphs are hereby incorporated.

60. Mutual of Omaha breached the implied duty of good faith and fair dealing.

61. Mutual of Omaha placed unreasonably barriers before Dr. Scafidi to deprive him of Policy Benefits.

62. Mutual of Omaha used biased medical examiners and evaluators to deny Dr. Scafidi's claim.

63. Mutual of Omaha unreasonably rejected objective and subjective evidence of Dr. Scafidi's continued disability.

64. Mutual of Omaha intentionally delayed benefits payments.

65. Mutual of Omaha intentionally denied benefit payments.

66. Mutual of Omaha intentionally denied the premium waiver to which Dr. Scafidi is entitled.

67. Mutual of Omaha placed its interests ahead of Dr. Scafidi's interests.

68. Mutual of Omaha either intended to injure Dr. Scafidi or acted to serve its own interests, having reason to know, and consciously disregarding a substantial risk that its conduct might significantly injure Dr. Scafidi.

69. A proximate result of Mutual of Omaha's conduct, in an amount to be proven at trial, Dr. Scafidi has been damaged in the amount of unpaid past due and future benefits, which Mutual of Omaha has expressed no intention to pay

70. As a further result of Mutual of Omaha's conduct, Dr. Scafidi has suffered and will continue to suffer anxiety, worry, mental and emotional distress, physical distress, financial distress, all to his general damages in an amount to be proven at trial.

## COUNT II
## BREACH OF CONTRACT

71. All other paragraphs are hereby incorporated.

72. At that time, Mutual of Omaha denied continued disability benefits, Dr. Scafidi met the Policy definition of disability.

73. Mutual of Omaha has breached the Policy.

74. Mutual of Omaha's breach of the Policy has caused injury to Dr. Scafidi by denying benefits in an amount to be proven at trial.

75. Mutual of Omaha breached the Policy by denying the provision for a premium waiver.

WHEREFORE, Dr. Scafidi seeks damages against Mutual of Omaha as follows:

A. Damages for failure to provide reasonable and proper disability benefits under the applicable coverage in an amount to be determined at trial;

B. Damages for all benefits (past and future) under the applicable coverage in an amount to be determined at trial;

C. Damages for premiums paid while the premium waiver should have been in effect;

D. Compensatory damages for mental, emotional, and physical distress and other incidental damages in an amount to be determined at trial;

E. An assessment of punitive and exemplary damages in an amount to be determined at trial to be appropriate to punish, deter and set an example of Mutual of Omaha;

F. Prejudgment interest.

G. Costs of suit incurred by Dr. Scafidi under A.R.S. § 12-341;

H. Reasonable attorney's fees according to A.R.S. § 12-341.01; and

I. For such further relief as the Court deems just and proper according to the circumstances.

Dated this 9th day of February 2021.

SCHIFFMAN LAW OFFICE, P.C.

*/s/ Lisa J. Counters*
Lisa J. Counters
Attorney for Plaintiff